UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HALINA SLADKOV,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>    Defendant. | Case No. 19-cv-02026-KAW<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 21, 22 |

Plaintiff Halina Sladkov seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for issuance of a waiver of an overpayment, or, in the alternative, for further proceedings.

Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court DENIES Plaintiff's motion for summary judgment, and GRANTS Defendant's cross-motion for summary judgment.

### I.    BACKGROUND

On May 9, 2005, Plaintiff applied for spousal insurance benefits based on her marriage to the wage earner, Vladimir Sladkov, in June 1987. (Administrative Record ("AR") 17.) On May 14, 2005, the Social Security Administration ("SSA") found that Plaintiff was entitled to monthly spousal's benefits. (AR 22.) On October 23, 2014, a letter was sent to Plaintiff advising her that she would be receiving "monthly widow's benefits . . . because of the death of VLADIMIR SLADKOV." (AR 27.)

On March 18, 2015, and April 15, 2015 the SSA informed Plaintiff that she had been overpaid social security benefits of $78,527.00. (AR 32, 36.) The overpayment was based on

Plaintiff not being entitled to any spousal benefits, as Plaintiff's marriage had been annulled in June 1988. (*See* AR 118.) Specifically, on June 27, 1988, the County of San Mateo Superior Court issued a judgment, stating that Plaintiff had been served with process on December 3, 1987. (AR 61.) Plaintiff did not appear in the annulment proceedings, and the Superior Court entered a judgment that the marriage was null due to fraud. (AR 61.) On June 28, 1988, the judgment was mailed to Plaintiff's address at 101 Eastmoor, Daly City, California. (AR 62.)

On May 15, 2015, Plaintiff filed a "Request for Waiver of Overpayment Recovery." (AR 153-60.) Plaintiff asserted that the overpayment was not her fault because she believed that the social security benefits were her own. (AR 153-54.) Plaintiff stated that she did not know until January 2015 that Mr. Sladkov had died or that they were no longer married, as she had not lived with him since 1992-1993. (AR 159-60.) Plaintiff also stated that she only spoke limited English. (AR 160.)

On August 18, 2017, Plaintiff's son, Andrzej Szapalas, submitted a statement stating that he came to the United States in June 1990. (AR 202.) He was met at the airport by Plaintiff and Mr. Sladkov. Mr. Szapalas believed Plaintiff and Mr. Sladkov were legally married, although they were living separately. Mr. Szapalas later moved into Plaintiff's apartment, while Mr. Sladkov moved to Walnut Creek. (AR 202.) From that point on, Plaintiff lived separately from Mr. Sladkov, although she saw him on social occasions until they stopped seeing each other about three to four years after Mr. Szapalas came to the United States. (AR 202.) Mr. Szapalas stated that when Mr. Sladkov introduced him to Mr. Sladkov's daughters, Mr. Sladkov referred to Plaintiff as his wife. (AR 202.)

On September 21, 2017, the Administrative Law Judge ("ALJ") held a hearing, at which Plaintiff testified with the assistance of an interpreter. (AR 208, 217.) Plaintiff testified that she had married Mr. Sladkov in June 1987. (AR 221.) Plaintiff moved in with Mr. Sladkov, and they resided together for a few years at the Eastmoor address. (AR 222.) During that time, Mr. Sladkov took many trips abroad, sometimes for months at a time. (AR 223-24.) Plaintiff also knew that Mr. Sladkov was going to Los Angeles and meeting other women romantically, getting engaged but not actually marrying them. (AR 227.)

2

Plaintiff further testified that she did not know what year Mr. Sladkov had died. (AR 228.) When asked if Mr. Sladkov had informed Plaintiff that he had married someone else, Plaintiff stated that she "didn't know anything," and that they "were not meeting. [She] didn't know where he was. He just disappeared." (AR 228.) The ALJ asked if Mr. Sladkov had informed Plaintiff that he had filed for divorce, and Plaintiff responded, "No. Absolutely not. I never had any contact. I never – I was never – I didn't know where he was at all." (AR 228.) Plaintiff stated that she did not know that Mr. Sladkov had petitioned for the marriage to be annulled. (AR 229.)

On February 26, 2018, the ALJ issued a decision denying Plaintiff's waiver request. (AR 13-16.) The ALJ found that Plaintiff was overpaid benefits because her marriage to Mr. Sladkov had been annulled in June 1988, and that Plaintiff was at fault in causing the overpayment. (AR 15.) In finding Plaintiff was at fault, the ALJ acknowledged Plaintiff's testimony that she was not aware that her marriage had been annulled or that Mr. Sladkov had filed for an annulment, and that she believed they were separated but still married. (AR 15.) The ALJ, however, pointed to the June 27, 1988 judgment, which stated that Plaintiff had been served with process in December 1987. (AR 15.) A copy of the judgment was then mailed to the claimant on June 28, 1988. (AR 15.) Mr. Sladkov subsequently remarried in 2005, before he passed away in October 2014. (AR 15.) The ALJ also explained that Plaintiff had testified that Mr. Sladkov had only sporadically stayed with her after 1988, and that Plaintiff was aware Mr. Sladkov was pursuing other women. (AR 16.) Based on these facts, the ALJ concluded that Plaintiff had accepted social security payments that she knew or should have known were incorrect. (AR 16.)

On February 26, 2018, Plaintiff filed a request for review of the ALJ's decision. (AR 4.) On February 15, 2019, the Appeals Council denied Plaintiff's request for review. (AR 4.) On April 4, 2019, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.)

Plaintiff filed her motion for summary judgment on October 29, 2019. (Pl.'s Mot., Dkt. No. 21.) Defendant filed an opposition and cross-motion for summary judgment on November 26, 2019. (Def.'s Opp'n, Dkt. No. 22.) Plaintiff filed her reply on December 10, 2019. (Pl.'s Reply, Dkt. No. 23.)

## II. LEGAL STANDARD

Section 404(a) permits the Commissioner to recover overpaid disability benefits. 42 U.S.C. § 404(a). A claimant may obtain a waiver for the overpayment if the Commissioner finds: "(1) [the] claimant is without fault in receiving the payment and (2) requiring repayment would either defeat the purpose of Title II or would be against equity and good conscience." *Quinlivan v. Sullivan*, 916 F.2d 524, 526 (9th Cir. 1990).

An individual is at fault if the incorrect payment resulted from: "(a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or (b) Failure to furnish information which he knew or should have known to be material; or (c) . . . acceptance of payment which he either knew or could have been expected to know was incorrect." 20 C.F.R. § 404.507. "The claimant of an overpayment has the burden of proving that he was without fault." *Anderson v. Sullivan*, 914 F.2d 1121, 1122 (9th Cir. 1990).

"The fault inquiry is highly subjective, highly individualized, and highly dependent on the interaction between the intentions and state of mind of the [plaintiff] and the peculiar circumstances of his situation." *Conley v. Berryhill*, Case No. 13-cv-4807-JSC, 2017 U.S. Dist. LEXIS 123568, at *18 (N.D. Cal. Aug. 4, 2017) (internal quotation omitted). In making this determination, the Commissioner must consider "all the pertinent circumstances surrounding the payment," including any "physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual may have." 20 C.F.R. § 416.552. In short, the "fault determination requires a reasonable person to be viewed in the claimant's own circumstances and with whatever mental and physical limitations the claimant might have." *Harrison v. Heckler*, 746 F.2d 480, 482 (9th Cir. 1984).

In turn, the Commissioner's "refusal to waive repayment should be affirmed if supported by substantial evidence . . . ." *Anderson*, 914 F.2d at 1122. "This is a highly deferential standard of review: 'Substantial evidence' means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (internal quotation omitted).

### III.     DISCUSSION

The ALJ found that Plaintiff was at fault because she knew, or should have known, that she was not married to Mr. Sladkov at the time she applied for wife's insurance benefits. (AR 15.) Plaintiff contends that the ALJ's determination was not supported by substantial evidence because: (1) the ALJ did not consider her limited English, (2) Plaintiff stated in her written request for a waiver that she thought she was receiving her own benefits, (3) the ALJ did not consider her testimony that Mr. Sladkov did not tell her that he had filed for an annulment, and (4) the ALJ did not discuss Mr. Szapalas's statement. (Pl.'s Mot. at 7-8.)  The Court finds that Plaintiff has not met her burden of showing that the ALJ's denial of her waiver was not supported by substantial evidence.

First, Plaintiff cites no authority that the ALJ had to specifically discuss her limited English.  While the ALJ was required to consider Plaintiff's limitations with English, the Ninth Circuit has found that "the ALJ [i]s not obliged to render a specific finding regarding the 'pertinent circumstances' of age, intelligence, education, and physical and mental health.  Rather, the regulation requires the ALJ to make fact findings regarding the three definitions of fault." *Anderson*, 914 F.2d at 1123.  If the ALJ properly makes those determinations, the district court may affirm. *Id.*

Additionally, Plaintiff points to no evidence that her English was so limited that she could not understand the relevant documents, or that she even made that argument to the ALJ.  Plaintiff did not testify that she would not have understood the petition for annulment or subsequent judgment, the May 9, 2005 application requesting spousal benefits, the May 14, 2015 letter stating Plaintiff was entitled to spousal benefits, or the October 23, 2014 letter stating that Plaintiff would now be receiving widow's benefits because Mr. Sladkov had passed away. (*See* AR 17, 22, 27.)  Indeed, in her filings, Plaintiff does not state she could not understand these documents; rather, she speculatively asserts that she "**may** not have understood" the petition for annulment, and that "it is not clear" she understood the type of benefits she was receiving or understood the October 23, 2014 letter. (Pl.'s Reply at 3-4 (emphasis added).)  Plaintiff has the burden of showing that she was without fault, but she failed to produce evidence to the ALJ that her English skills would

have impacted her understanding of key documents.

Additionally, certain facts that the ALJ found significant were not dependent on Plaintiff's understanding of English. For example, the ALJ pointed to Plaintiff's testimony that Mr. Sladkov only sporadically stayed with her after 1988 and that she was aware he was pursuing other women. (AR 16, 227.) Plaintiff also testified that she did not even know where Mr. Sladkov was, that he had remarried, or that he had died. (AR 228.) Such facts could lead a reasonable fact finder to conclude that Plaintiff knew or, at a minimum, should have known that she was no longer married to Mr. Sladkov. Thus, the ALJ did not err.

Second, although Plaintiff stated in her written request for a waiver that she thought she was receiving her own benefits, there were multiple documents in the record that showed Plaintiff knew or should have known she was receiving spousal benefits. Specifically, Plaintiff filled out an application requesting spousal benefits, received a letter stating she was being awarded spousal benefits, and received a letter in October 2014 stating that she would now be receiving widow's benefits. (AR 17, 22, 27.) As discussed above, Plaintiff's arguments that it was "not clear" she understood these documents does not satisfy her burden of showing that there was no substantial evidence supporting the ALJ's decision.

Third, Plaintiff argues that the ALJ did not consider her testimony that Mr. Sladkov did not tell her that he had filed for annulment. The ALJ, however, acknowledged this testimony, but went on to find that Plaintiff knew or should have known she was no longer married to Mr. Sladkov "because she was served legal process in December 1987 and a copy of the judgment was mailed to her." (AR 15-16.) The ALJ also pointed to the fact that Mr. Sladkov only sporadically stayed with Plaintiff after 1988 and that Plaintiff knew he was pursuing other women.

Finally, while the ALJ did not specifically address Mr. Szapalas's statement, Plaintiff cites no authority that the ALJ was required to discuss the statement. Further, while Mr. Szapalas's statement supports Plaintiff's testimony that she believed she was still married to Mr. Sladkov, Mr. Szapalas's statement does not negate the facts that the ALJ relied on in finding that Plaintiff knew or should have known that she was no longer married to Mr. Sladkov. (*See* AR 15-16.)

Accordingly, the Court finds that substantial evidence supports the ALJ's determination

that Plaintiff knew or should have known that she was no longer married to Mr. Sladkov. In light of that finding, the ALJ did not need to address whether repayment would either defeat the purposes of Title II or would be against equity and good conscience. *See Anderson*, 914 F.2d at 1124.

### IV.   CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

IT IS SO ORDERED.

Dated: October 22, 2020

_____
KANDIS A. WESTMORE
United States Magistrate Judge